ACCEPTED
03-14-00525-CR
4442271
THIRD COURT OF APPEALS
AUSTIN, TEXAS
3/10/2015 2:51:28 PM
JEFFREY D. KYLE
CLERK

## Case No. 03-14-00525-CR

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS

3/11/2015 2:51:28 PM

JEFFREY D. KYLE
Clerk

# IN THE COURT OF APPEALS
# THIRD JUDICIAL DISTRICT
# AUSTIN, TEXAS

# ELIAS SHAWN BIHL, Appellant

# VS.

# THE STATE OF TEXAS, Appellee

BRIEF FOR APPELLANT
IN ACCORDANCE WITH *ANDERS v. CALIFORNIA*

On Appeal from Cause Number C-13-0631-SA
in the 340TH District Court, Tom Green County, Texas

Prepared by:
Justin S. Mock
Ellis & Mock, PLLC
125 South Irving Street
San Angelo, Texas 76903
Telephone: (325) 486-9800
Facsimile: (325) 482-0565
Texas State Bar Number 24064155
Justin@ellisandmock.com
Court Appointed Attorney
for Appellant Elias Shawn Bihl

## Identity Of Parties And Counsel

In accordance with Rule 38.1(a), Texas Rules of Appellate Procedure, Counsel for Appellant certifies the following is a complete list of parties and counsel known to be legally interested in the resolution of the instant appeal.

Mr. Jason Ferguson
Office of Tom Green County District Attorney
124 West Beauregard Avenue
San Angelo, Texas 76903
Appellee


Mr. Elias Shawn Bihl
Inmate Number 01938565
TDCJ
McConnell Unit
3001 South Emily
Beeville, Texas 78102
Appellant


/s/ Justin S. Mock
Justin S. Mock, Attorney for Appellant

i

# TABLE OF CONTENTS

Identity Of Parties And Counsel ........................................................................... i

Table Of Contents ................................................................................................ ii

Index Of Authorities............................................................................................. v

Statement Of The Case ...................................................................................... vii

Issues Presented ............................................................................................... viii

Issue Number One: Sufficiency of the indictment.

Issue Number Two: Any adverse pretrial rulings affecting the course of the trial, including but not limited to rulings on motions to suppress, motions to quash, and motions for a speedy trial.

Issue Number Three: Any adverse rulings during trial on objections or motions, including but not limited to objections to admission or exclusion of evidence, objections premised on prosecutorial or judicial misconduct, and motions for mistrial.

Issue Number Four: Any adverse rulings on post-trial motions, including motions for a new trial.

Issue Number Five: Jury selection.

Issue Number Six: Jury Instruction.

Issue Number Seven: Sufficiency of the evidence, including a recitation of the elements of the offense and facts and evidence adduced at trial relevant to the offense upon which conviction is based.

Issue Number Eight: Any failure on the part of appellant's trial counsel to object to fundamental error.

Issue Number Nine: Any adverse rulings during the punishment phase on objections or motions.

Issue Number Ten: Whether the sentence imposed was within the applicable range of punishment?

Issue Number Eleven: Whether the written judgment accurately reflects the sentence that was imposed and whether any credit was properly applied?

Issue Number Twelve: Examination of the record to determine if the appellant was denied effective assistance of counsel.

Statement Of The Facts ............................................................................................... 1

Summary Of The Argument Of Issue Number One. ................................................ 3

Argument Of Issue Number One ............................................................................. 3

Summary Of The Argument Of Issue Number Two ................................................ 5

Argument Of Issue Number Two ............................................................................. 5

Summary Of The Argument Of Issue Number Three .............................................. 5

Argument Of Issue Number Three ........................................................................... 5

Summary Of The Argument Of Issue Number Four. ............................................... 8

Argument Of Issue Number Four. ............................................................................ 8

Summary Of The Argument Of Issue Number Five ................................................ 9

Argument Of Issue Number Five ............................................................................. 9

Summary Of The Argument Of Issue Number Six .................................................. 9

Argument Of Issue Number Six ............................................................................... 9

Summary Of The Argument Of Issue Number Seven.................................................. 10

Argument Of Issue Number Seven ..................................................................... 11

Summary Of The Argument Of Issue Number Eight. ............................................. 26

Argument Of Issue Number Eight........................................................................ 26

Summary Of The Argument Of Issue Number Nine................................................ 27

Argument Of Issue Number Nine ....................................................................... 27

Summary Of The Argument Of Issue Number Ten ............................................... 30

Argument Of Issue Number Ten ........................................................................ 31

Summary Of The Argument Of Issue Number Eleven ........................................... 32

Argument Of Issue Number Eleven....................................................................... 33

Summary Of The Argument Of Issue Number Twelve .......................................... 33

Argument Of Issue Number Twelve ................................................................... 33

Anders Brief. ................................................................................................... 37

Prayer................................................................................................................ 38

Certificate of Service ........................................................................................ 40

Certificate of Compliance.................................................................................. 41

Copy of Anders Correspondence Addressed To Elias Shawn Bihl............................ 42

# INDEX OF AUTHORITIES

CASE LAW                                                  PAGE

*Anders v. California*, 87 S. Ct. 1396 (1967)..........................................................................1

*Billodeau v. State*, 277 S.W. 3d 34 (Tex. Crim. 2009).........................................8

*Bone v. State*, 77 S.W. 3d 828 (Tex. Crim. App. 2002)................................... 35,37

*Brooks v. State*, 323 S.W. 3d 893 (Tex. Crim. App. 2010)..............................11,12

*Druery v. State*, 225 S.W. 3d 491 (Tex. Crim. App. 2007)...............................10

*Gear v. State*, 340 S.W. 3d 743 (Tex. Crim. App. 2011)........................12

*Hernandez v. State*, 988 S.W. 2d 770 (Tex. Crim. App. 1999)...........................33

*Hernandez v. State*, 726 S.W. 2d 53 (Tex. Crim. App. 1986)...........................35

*Jackson v. Virginia*, 443 U.S. 307 (1979)...............................................11,12

*Mallet v. State*, 65 S.W. 3d 59 (Tex. Crim. App. 2001)................................35,36

*Martinez v. State*, 327 S.W. 3d 727 (Tex. Crim. App. 2010)...............................7

*Mitchell v. State*, 68 S.W. 3d 640 (Tex. Crim. App. 2002)................................35

*Nichols v. State*, 56 S.W.3d 760, 765 (Tex.App.-Houston [14[th] Dist.] 2001, pet. ref'd)................................................................................29

*Sandoval v. State*, 03-11-00416-CR, September 13, 2013...............................7,8

*Strickland v. Washington*, 466 U.S. 668 (1984)........................................33,34

*Thompson v. State*, 9 S.W. 3d 808 (Tex. Crim. App. 1999).......................34,35,36

*Tillman v. State*, 354 S.W. 3d 425 (Tex. Crim. App. 2011). ..................... ......7

| STATUTES | PAGE |
|---|---|
| Texas Code of Criminal Procedure Article. 21.02 | 3,4 |
| Texas Code of Criminal Procedure Article. 42.08 | 28,29 |
| Texas Penal Code Section 1.07 | 11 |
| Texas Penal Code Section 2.01 | 11 |
| Texas Penal Code Section 12.42 | 30,31 |
| Texas Penal Code Section 21.01 | 4,5 |
| Texas Penal Code Section 22.02 | 4,5,11,31 |
| Texas Rule of Appellate Procedure 21.8 | 8 |

# STATEMENT OF THE CASE

Nature of the Case:
In District Court Cause Number C-13-0631-SB, Elias Shawn Bihl was charged by indictment with having committed the offense of aggravated assault with a deadly weapon. C.R. 10-11. The indictment included enhancement paragraphs referencing two previous felony convictions exposing Bihl to the punishment range for a habitual felony offender. C.R. 10-11.

Course of Proceedings:
Elias Bihl entered a plea of not guilty to the indictment and proceeded to jury trial on May 19, 2014. IV R.R. 19; IV R.R. 9.

Trial Court's Disposition of the Case:
At the conclusion of a two day jury trial, Elias Shawn Bihl was found guilty of aggravated assault with a deadly weapon as alleged in the indictment. V R.R. 88; C.R. 49-52, 62. The jury found both enhancement paragraphs to be true. V R.R. 126; C.R. 49-52, 57. The jury assessed punishment and Bihl was sentenced to thirty (30) years in TDCJ. V R.R. 126; C.R. 49-52, 57. The trial court ordered that the sentence in this case be served consecutively to the sentences in Cause numbers C-13-0381-SB and C-13-0382-SB. V R.R. 130-131; C.R. 49-52.

# ISSUES PRESENTED

A review of the complete Record results in an absence of finding any meritorious issues to be advanced in good faith on appeal. Any conceivable issues result from the following considerations:

1.  Was the indictment sufficient to support Elias Shawn Bihl's conviction?

2.  Did the trial judge err in any of the court's pretrial rulings, including but not limited to rulings on motions to suppress, motions to quash, and motions for a speedy trial, which adversely impacted Elias Shawn Bihl?

3.  Did the trial judge err in any of the court's rulings during the course of trial, including but not limited to objections to admission or exclusion of evidence, objections premised on prosecutorial or judicial misconduct, and motions for mistrial, which adversely impacted Elias Shawn Bihl?

4.  Did the trial judge err in any of the court's post trial rulings, including on a motion for new trial, which adversely impacted Elias Shawn Bihl?

5.  Does the record indicate reversible error occurred during or in connection with jury selection?

6.  Does the record indicate correct instructions were provided to the jury?

7.  Was the evidence presented at trial sufficient to support Elias Shawn Bihl's conviction?

8.  Does reversible error exist based on the failure of Counsel for Elias Shawn Bihl to object to fundamental error?

9.  Did the trial judge err in any of the court's rulings during the punishment phase of trial which adversely impacted Elias Shawn Bihl?

10. Is Elias Shawn Bihl's sentence within the applicable punishment range for a habitual felony offender?

11. Does the Judgment accurately reflect the sentence imposed by the trial court and properly apply jail credit to Elias Shawn Bihl's sentence?

12. Did Attorney Nathan Butler render ineffective assistance of counsel to Elias Shawn Bihl?

To the Honorable Justices of the Third Court of Appeals:

Appellant, Elias Shawn Bihl, submits this Brief on appeal by and through his Appellate Counsel, Justin S. Mock. After a conscientious examination of the case, including a diligent review of the Record and applicable authorities, Counsel finds an absence of meritorious grounds for appeal and further submits the basis of any appeal in this case would be frivolous in nature. Therefore, Appellate Counsel Justin S. Mock submits the following *Anders Brief* on behalf of Appellant. *Anders v. State of California,* 386 U.S. 738 (1967).

## STATEMENT OF THE FACTS

Elias Shawn Bihl was charged by indictment with having committed the offense of aggravated assault with a deadly weapon. C.R. 10-11. The indictment included enhancement paragraphs referencing two prior felony convictions exposing Bihl to the punishment range for a habitual felony offender. C.R. 10-11. The trial court appointed attorney Nathan Butler to represent Bihl on May 13, 2013. C.R. 7. The case proceeded to jury trial on May 19, 2014. IV R.R. 9.

The State's case against Bihl sought to establish the following facts and circumstances at trial: Bihl and Rigoberto Rivera were drinking and using cocaine in their residence; Bihl began acting erratic and paranoid; Bihl assaulted Rivera

1

with a gun and knife causing injuries; Rivera escaped the residence by crawling through a window; Rivera jumped the fence in back of the house and went to seek help from neighbors; Rivera was found on the front porch of a nearby neighbor's house covered in blood with multiple injuries; Bihl was found several blocks from his residence after having a motor vehicle accident.

Defense counsel aggressively cross examined the State's witnesses and argued the State ultimately failed to prove that the alleged victim was stabbed by Bihl with a knife.

At the conclusion of the guilt/innocence phase of trial, the jury found Bihl guilty of aggravated assault of a deadly weapon as alleged in the indictment. V R.R. 88; C.R. 62. At the conclusion of the punishment phase of trial, the jury found both of the enhancement paragraphs contained in the indictment to be true and assessed punishment at thirty (30) years in TDCJ. V R.R. 126; C.R. 57. Prior to sentencing Bihl, the trial court granted the State's Motion to Cumulate Sentence, and ordered that the sentence in this cause be served consecutively with the sentences rendered in Cause Numbers C-13-0382-SB and C-13-0381-SB. V R.R. 130; C.R. 50.

Bihl filed a Motion for New Trial and Motion in Arrest of Judgment on June 19, 2014. C.R. 64-66. Bihl filed Notice Of Appeal with the trial court on August 15,

2014. C.R. 71. Bihl now appeals his conviction and sentence to this Honorable Third Court of Appeals.

## SUMMARY OF ARGUMENT OF ISSUE NUMBER ONE

The indictment was sufficient to support Bihl's conviction.

## ARGUMENT OF ISSUE NUMBER ONE

Article 21.02 of the Texas Code Of Criminal Procedure lists the requisites of an indictment. *Texas Code Of Criminal Procedure, Article 21.02.* In order for an indictment to be deemed sufficient, Article 21.02 requires the following:

1. It shall commence, "In the name and by authority of The State of Texas;"

2. It must appear that the same was presented in the district court of the county where the grand jury is in session;

3. It must appear to be the act of a grand jury of the proper county;

4. It must contain the name of the accused, or state that his name is unknown and give a reasonable accurate description of him;

5. It must show that the place where the offense was committed is within the jurisdiction of the court in which the indictment is presented;

3

6. The time mentioned must be some date anterior to the presentment of the indictment, and not so remote that the prosecution of the offense is barred by limitation;

7. The offense must be set forth in plain and intelligible words;

8. The indictment must conclude, "Against the peace and dignity of the State;" and

9. It shall be signed officially by the foreman of the grand jury." *Texas Code Of Criminal Procedure, Article 21.02.*

The essential elements relevant to the aggravated assault with a deadly weapon charge brought against Bihl are contained in Section 22.02(a)(2) of the Texas Penal Code. *Texas Penal Code Section 22.02(a)(2).* Section 22.02(a)(2) states, "A person commits an offense if the person commits assault as defined in Sec. 22.01 and the person uses or exhibits a deadly weapon during the commission of the assault. *Texas Penal Code Section 22.02.*

Section 22.01(a) provides,
"A person commits an offense if the person:
(1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;
(2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or
(3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative. *Texas Penal Code Section*

4

*22.01.*

The language of the indictment complies with all of the requirements of Texas Code Of Criminal Procedure Article 21.02 and includes all of the essential elements of Texas Penal Code Section 22.02(a)(2). There is no indication that the indictment was insufficient. Reversible error does not exist based on an insufficient indictment.

## SUMMARY OF ARGUMENT OF ISSUE NUMBER TWO

No adverse pretrial rulings resulted in reversible error.

## ARGUMENT OF ISSUE NUMBER TWO

The Reporter's transcript includes a pretrial hearing which took place May 6, 2014. II R.R. 4-11. The Record does not reflect there were any pretrial rulings made which were adverse to Bihl. Therefore, no reversible error exists based on adverse pretrial rulings.

## SUMMARY OF ARGUMENT OF ISSUE NUMBER THREE

No adverse rulings during trial resulted in reversible error.

## ARGUMENT OF ISSUE NUMBER THREE

During the trial, there were three primary rulings adverse to Bihl. These

5

included the trial judge sustaining relevance objections made by the State during defense counsel's cross examination of witness Rigoberto Rivera and the trial judge overruling an objection made by Defense counsel to the admission of possible extraneous offense evidence against Bihl.

During the defense's cross examination of Rigoberto Rivera, the alleged victim, the Assistant District Attorney objected to the relevance of defense counsel's line of questioning pertaining to the witness' country of residence. IV R.R. 36. The trial court sustained the objection and permitted defense counsel to make a bill of review. IV R.R. 39, 40-43. Defense counsel attempted to elicit testimony from the witness to establish that the witness had made a prior inconsistent statement as to his residency status. Actual testimony elicited during the bill of review indicated that the witness' prior statement was not inconsistent with the testimony given in this case. IV R.R. 40-43.

Also during the defense counsel's cross-examination of Rivera, the State objected to questions pertaining to a document previously marked as Defense Exhibit One, but not yet admitted into evidence. IV R.R. 47. The objection was sustained by the trial court. IV. R.R. 47. Defense counsel went on to offer Defense Exhibit 1 for demonstrative purposes only. The State had no objection and the exhibit was admitted for demonstrative purposes. IV. R.R. 48. As the

exhibit that defense counsel sought to elicit testimony about was ultimately admitted into evidence, sustaining the objection of the State had no adverse impact on Bihl.

During the direct examination of Officer Richard Espinoza by the State, testimony concerning Bihl's behavior in the emergency room was elicited. V R.R. 13. Defense counsel objected that the state was seeking to introduce evidence of an extraneous offense(s) of Bihl. V R.R. 14. The State, in response to the objection, claimed the evidence sought to be elicited was being offered to show the state of mind of the defendant. The trial court overruled the objection and allowed the testimony. V R.R. 14.

An appellate court applies the abuse of discretion standard when reviewing a trial court's ruling on the admission or exclusion of evidence. *Tillman v. State*, 354 S.W. 3d 425, 435 (Tex. Crim. App. 2011); *Sandoval v. State*, 03-11-00416-CR, September 13, 2013. The trial court will not be found to have abused its discretion unless its decision "lies outside the zone of reasonable disagreement." *Martinez v. State*, 327 S.W. 3d 727, 736 (Tex. Crim. App. 2010); *Sandoval v. State*, 03-11-00416-CR, September 13, 2013. The reviewing court considers the trial court's ruling based on the evidence before the trial court at the time of the ruling and the trial court's decision should be upheld if it lies within the zone of reasonable

disagreement. *Billodeau v. State*, 277 S.W. 3d 34, 39 (Tex. Crim. 2009); *Sandoval v. State*, 03-11-00416-CR, September 13, 2013. There is no indication the trial judge abused his discretion in overruling the Bihl's objections.

Based on a thorough review of the Record and applicable legal authorities, no reversible error exists based on adverse rulings made during trial.

## SUMMARY OF ARGUMENT OF ISSUE NUMBER FOUR

No adverse rulings on post-trial motions resulted in reversible error.

## ARGUMENT OF ISSUE NUMBER FOUR

A Motion For New Trial and Motion in Arrest of Judgment was filed on behalf of Bihl on June 19, 2014. C.R. 64-66. It does not appear a full hearing on the Motion For New Trial was requested or took place which is not uncommon. The Record is void of any indication the trial court ruled on the Motion For New Trial and Motion in Arrest of Judgment. Such a motion, if not ruled upon within 75 days after imposing or suspending sentence, will be deemed denied after the expiration of the 75 day period. *Texas Rules of Appellate Procedure 21.8*. There is no indication that the trial court abused its discretion in failing to rule on Bihl's Motion For New Trial, and no reversible error exists based on adverse rulings on post-trial motions.

8

## SUMMARY OF ARGUMENT OF ISSUE NUMBER FIVE

Reversible error does not exist based on jury selection.

## ARGUMENT OF ISSUE NUMBER FIVE

The Reporter's transcript documents the jury selection process. III R.R. 4-95. The State and the Defense had an opportunity to conduct their own voir dire. III R.R. 27-87. The Clerk's Record contains documentation of strikes exercised by the State and the Defense during the jury selection process. C.R. 28-36. The Reporter's Transcript reflects the District Clerk swore in the individuals selected to serve on the jury as required by law. IV R.R. 88-89. The Reporter's transcript reflects the trial judge issued preliminary instructions to the empaneled jurors as required by law. IV R.R. 91-95. There is no indication based on a thorough review of the Record that any error took place during the jury selection process resulting in reversible error.

## SUMMARY OF ARGUMENT OF ISSUE NUMBER SIX

Reversible error does not exist based on the instructions provided to the jury.

## ARGUMENT OF ISSUE NUMBER SIX

The Record documents the instructions provided to the jury by the trial

judge. C.R. 53-62. The Reporter's transcript reflects the trial judge read the jury instructions out loud before the jury began deliberations during the guilt/innocence phase of trial and before the jury began deliberations during the punishment phase of trial. V R.R. 44-54, 105-112. Both jury instructions are included in the Clerk's Record. C.R. 58-61, 53-56. The Reporter's transcript reflects charge conferences were conducted prior to the presentation of either charge to the jury. V R.R. 42-43, 104. Neither party objected to the proposed charges. V R.R. 42-43, 104. The relevant jury forms are included in the Clerk's Record. C.R. 62, 57.

Appellate courts asked to review jury charge error first determine whether error exists in the jury charge, and if so, determine if sufficient harm resulted from the error to warrant reversal. *Druery v. State*, 225 S.W. 3d 491, 504 (Tex. Crim. App. 2007).

A thorough review of the Record indicates no error exists based on the instructions provided to the jury at either stage of trial resulting in reversible error.

## SUMMARY OF ARGUMENT OF ISSUE NUMBER SEVEN

The evidence presented at trial was sufficient to support Bihl's conviction.

## ARGUMENT OF ISSUE NUMBER SEVEN

*Burden Of Proof And Elements Of The Offense:*

At trial the State of Texas was required to prove each essential element of the offense beyond a reasonable doubt. *Texas Penal Code Section 2.01.* The essential elements relevant to the aggravated assault with a deadly weapon charge brought against Bihl are contained in Section 22.02(a)(2) of the Texas Penal Code and in the indictment. *Texas Penal Code Section 22.02*; C.R. 10-11. The essential elements the State was required to prove at trial include:

a)   The offense was committed on or about May 12, 2013, in Tom Green County, Texas;

b)   Bihl was the individual who committed the offense;

c)   Bihl committed the offense intentionally, knowingly or recklessly;

d)   Bihl caused bodily injury to Rivera by stabbing with a knife;

e)   Bihl used or exhibited a deadly weapon (knife); and

f)   The knife, in the manner of its use or intended use, was capable of causing death and serious bodily injury. *Texas Penal Code Section 22.02 (a)(2)*; *Texas Penal Code Section 1.07(17)(b)*; C.R. 10-11.

*Standard Of Review On Appeal For Sufficiency Of The Evidence:*

The Texas Court of Criminal Appeals has held that when an appellate court is asked to review the sufficiency of the evidence presented at trial, the appellate court should apply the standard of review for legal sufficiency as set out by the United States Supreme Court in *Jackson v. Virginia.* *Brooks v. State*, 323 S.W. 3d 893, 895, 916 (Tex. Crim. App. 2010), *Jackson v. Virginia*, 443 U.S. 307, 316

11

(1979). The application of the *Jackson* standard requires the appellate court to review all of the evidence in the light most favorable to the verdict and determine, based on that evidence, and reasonable inferences therefrom, if a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, *Brooks*, 323 S.W. 3d at 895, 899, 916; *Gear v. State*, 340 S.W. 3d 743, 747 (Tex. Crim. App. 2011).

The evidence presented by the during the guilt/innocence phase of trial included the live testimony of five witnesses, one demonstrative exhibit, sixty-nine photographs, and two items of physical evidence, a knife and a firearm. IV R.R. 5-10.

Rigoberto Rivera, the alleged victim, testified at the trial. IV R.R. 22. Rivera testified that he and Bihl worked together moving rigs. IV R.R. 23. He and Bihl were living together in a home on May 11, 2013. IV R.R. 23. He indicated that on that evening he and Bihl were talking, drinking and doing cocaine when Bihl went crazy and attacked him. IV R.R. 24. Bihl began walking through the house looking through windows. He told Rivera that someone was trying to kill them and for Rivera to hide. IV R.R. 25. They went into Bihl's room and Bihl put a gun to Rivera's head. IV R.R. 26. Bihl had previously shown the gun to Rivera. IV R.R. 27. Rivera was scared and believed Bihl was going to

12

kill him. They went to kitchen where Bihl got a knife and pointed it at Rivera. IV R.R. 28. Bihl began hitting Rivera with the gun. Rivera almost passed out and he noticed Bihl was no longer in the room. IV R.R. 30. Rivera pushed a fan out of a window, and exited the room through that window. IV R.R. 30. Rivera jumped the back fence and went to look for help. IV R.R. 30. Rivera went to one house seeking help, but got no response. IV R.R. 31. People at the second house called for help. IV R.R. 31. Rivera was treated at the hospital for six cuts and received stitches. IV R.R. 32. He also received staples on his head. IV R.R. 32. Rivera testified that he did not have a weapon during the incident. IV R.R. 33. He denied fighting with or threatening Bihl. IV R.R. 33. Rivera identified Bihl in the courtroom. IV R.R. 34.

On cross-examination, Rivera testified that he has a U.S. residence card, but is not a U.S. citizen. IV R.R. 34-35. Rivera did not remember how much cocaine he did on the night of the incident. IV R.R. 44-45. He estimated he had close to six beers. IV R.R. 46. While they were in the living room, Bihl got up and walked over to look out the windows. IV R.R. 50-51. Bihl was moving around a lot and went to Bihl's bedroom and retrieved the gun. IV R.R. 51. When Bihl emerged from his room he had the gun. IV R.R. 52. Bihl told Rivera someone was outside and for Rivera to hide. Rivera was following Bihl and

13

listening to him. IV R.R. 53. Rivera followed Bihl around the house and then into Bihl's room. IV R.R. 54-55. Bihl put the gun to Rivera's head. IV R.R. 55. Bihl was holding the gun with his right hand, and holding Rivera around the throat with his left hand. IV R.R. 56. Bihl took Rivera to the kitchen, and "out of nowhere he had the knife." IV R.R. 56. Bihl did not have the knife before they went into the kitchen. IV R.R. 57. The knife was black, but Rivera did not really see the knife because of the way Bihl was holding him. IV R.R. 57. Rivera admitted to previously calling the knife a "kitchen knife," but wasn't really able to see the knife held to his throat. IV R.R. 57-58. Rivera was not sure if the knife the State had in its possession was the knife used by Bihl. IV R.R. 59.

Rivera stated he was not injured in the kitchen, but he didn't notice his injuries until he was at the hospital. IV R.R. 59-60. Once they reached the bedroom, Bihl began hitting him in the head with the gun. IV R.R. 60. Defense counsel had Rivera demonstrate his positioning before and after he was initially struck by Bihl with the gun. IV R.R. 61-63. Rivera indicated he was covering himself during the attack. He believes he passed out. Once Rivera opened his eyes he realized Bihl was not in the room. At that point Rivera tried to escape. IV R.R. 64. Rivera stated that he never saw Bihl stab him with the knife. He said everything happened quickly and he thinks he passed out. IV R.R. 67. Defense

14

counsel questioned Rivera as to how he left through the window and how he jumped the fence. IV R.R. 68-70. Rivera never saw how Bihl left the residence. IV R.R. 71. Rivera did not return to the residence. IV R.R. 71.

On redirect examination by the State, Rivera testified that he first noticed Bihl had a knife when Bihl took him to the kitchen while holding a gun. IV R.R. 72. Rivera did not know where the knife came from IV R.R. 72. Bihl put the knife to Rivera's throat. IV R.R. 72. Rivera did not get a good look at the knife. He only knew it was a black knife. IV R.R. 73. Rivera denied having any injuries, cuts or head wounds before this incident. IV R.R. 74. He did not know he had cuts until he was at the hospital. IV R.R. 75.

San Angelo Police Officer Anthony Dietz testified at trial. IV R.R. 77. Officer Dietz was working patrol on May 11, 2013, and was dispatched to the 1700 block of Juanita Street in San Angelo, Tom Green County, Texas. IV R.R. 78. Upon arrival he found the victim lying on the ground, covered in blood. IV R.R. 79. The victim identified himself to Officer Dietz as Rigoberto Rivera. IV R.R. 81. Rivera was crying and told him that someone was trying to kill him. IV R.R. 81. Officer Dietz indicated that Rivera had a cut on his forearm that was caused by a sharp cutting instrument. IV R.R. 83. Rivera expressed to Dietz that he was in pain. IV R.R. 89. Officer Dietz called a medic and took pictures of

15

Rivera and the scene where Rivera was found. IV R.R. 83. Using Rivera's description, Dietz was able to follow the blood trail to the alley. IV R.R. 84.

Dietz later went to the hospital, where he informed Bihl that he was under arrest for aggravated assault with a deadly weapon. IV R.R. 86, 88. He did not notice any significant injuries to Bihl at that time. IV R.R. 90. Officer Dietz identified Bihl in the courtroom. IV R.R. 88.

San Angelo Police Officer Lee Kvittem testified at the trial. IV R.R. 91. Officer Kvittem was working on May 11, 2013, when he received a call to assist other officers. IV R.R. 92. He initially responded to the scene where the victim was located, but was instructed to find the crime scene. IV R.R. 92. Based on a description of the house and vehicle expected to be found, Officer Kvittem located the crime scene at 1601 Juanita Street, San Angelo, Tom Green County, Texas. IV R.R. 92-93. He entered the residence through a broken front window. IV R.R. 93. His purpose was to determine if there were additional victims or suspects inside. IV R.R. 93. He was accompanied by Officer Bradshaw. IV R.R. 94. During his search he entered a bedroom. There was a large pool of blood on the floor, along with a knife, gun and ammunition. IV R.R. 96. Officer Kvittem also saw an open window with blood on the window sill. IV R.R. 97. From what he could see, the knife in the room had blood on it. He believed it to be a pocket

16

knife. IV R.R. 98. There was a dresser knocked over. IV R.R. 98. He and Officer Bradshaw did not locate any individuals in the residence, and exited the residence. IV R.R. 95. They secured the scene by ensuring no person could enter the residence. IV R.R. 95.

On cross-examination, Officer Kvittem indicated that the front door of the residence was blocked from the inside by overturned chairs. IV R.R. 102. There was also a table overturned that blocked the entryway to the kitchen. IV R.R. 102. Kvittem looked in the back of the house and looked in the bathroom. He did not look at the back fence, nor could he recall the condition of the bathroom. IV R.R. 103.

Detective Matthew Vaughn testified at the trial. IV R.R. 105. Detective Vaughn was on call on May 11, 2013, and received a call at approximately 11:40 p.m. IV R.R. 106. Vaughn was briefed on the telephone by Officer Charles Barker regarding a possible aggravated assault with a deadly weapon. IV R.R. 107. Vaughn reported to the scene of a motor vehicle accident in the 1100 block of Jefferson Street. IV R.R. 107. It was believed the accident was related to the possible aggravated assault. IV R.R. 107. Upon arrival, Vaughn observed a vehicle with minimal damage with a substantial amount of blood in the vehicle. IV R.R. 107. The suspect was not on the scene at that time. IV R.R. 107.

17

Detective Vaughn then went to the 1700 block of Juanita Avenue which was four to five blocks from the scene of the motor vehicle accident. These locations were within San Angelo, Tom Green County, Texas. IV R.R. 108. After a cursory examination of the scene, Vaughn went to 1601 Juanita Avenue, where the assault was believed to have been committed. IV R.R. 109. Once there he observed a chair on the front porch and glass, which indicated to him that the chair had come through the window. IV R.R. 109. From that window Vaughn could see overturned furniture inside the house, as well as what he believed to be blood. IV R.R. 109. Detective Vaughn did not enter the residence at that time. IV R.R. 109. He instructed his officers to remain that the scene and not to allow anyone entry to the residence. IV R.R. 109-110.

Detective Vaughn went to Shannon Medical Center and spoke with Rigoberto Rivera. IV R.R. 110. Rivera told him that he and a co-worker lived together in the residence on Juanita. They drank beer and used cocaine, and Bihl became paranoid. IV R.R. 110. Bihl told Rivera that people were out to get him and without warning began to strike Rivera on the head with a gun. IV R.R. 111. Rivera stated that Bihl then began stabbing him with a knife. Rivera reported he was able to crawl out of the window. IV R.R. 111. At that point, Vaughn had identified the suspect as Elias Bihl. IV R.R. 111.

18

Rivera was able to describe the gun as a nine millimeter semi-automatic gun with a gray or beige slide. IV R.R. 111,112. Rivera was unsure of the description of the knife when speaking to Vaughn, but initially reported it may have been a kitchen knife. IV R.R. 112.

After speaking with Rivera, Vaughn attempted to speak with Bihl. IV R.R. 113. Vaughn believed Bihl was intoxicated and confused. Bihl was unable to identify himself or his location. Vaughn did not speak with him further. IV R.R. 113. Vaughn was able to identify Bihl in the courtroom during the trial. IV R.R. 114.

Detective Vaughn obtained consent to search the residence from Rivera. IV R.R. 114. Vaughn returned to the residence at 1601 Juanita and confirmed that the house had not been entered in his absence. IV R.R. 114. Vaughn, Officer Bradshaw, Officer Kvittem and crime scene technician Clements entered the residence. IV R.R. 114-115. They entered through the front window as it appeared the front door was blocked or barricaded. IV R.R. 115. Officers Bradshaw and Kvittem had previously been stationed at the front and rear of the residence to maintain the security of the scene. IV R.R. 115.

Once in the residence, Vaughn saw furniture in disarray, beer bottles, a small baggie with white powder and other items. He observed a large amount of

what he suspected to be blood in a bedroom. IV R.R. 117. Vaughn identified a black Smith and Wesson folding knife with blood on it. IV R.R. 118. Vaughn identified photographs depicting the scene as it was upon his inspection, including a beige and black nine millimeter Jimenez Arms semi-automatic handgun. IV R.R. 113, 116-119, 121. At the scene, Vaughn seized Rivera's wallet, which he returned to Rivera, as well as the knife and gun. IV R.R. 122, 123. When interviewing Rivera, Vaughn noticed puncture wounds to Rivera's arms which Vaughn described as defensive wounds, as well as cuts and abrasions to Rivera's head. IV R.R. 122. Vaughn testified that these wounds could have been made by, "a sharp pointed object, an edged weapon, a knife." IV R.R. 123. He believed the knife found at the scene was consistent with the injuries sustained by Rivera. IV R.R. 123. The knife and hand gun were admitted into evidence without objection. IV R.R. 125, 127. Vaughn further testified that based on his experience, training and viewing the injuries to Rivera he believed the knife seized at the scene was capable of causing death or serious bodily injury. IV R.R. 128.

Vaughn took blood samples from the scene, but did not believe it was necessary to conduct DNA analysis on the samples. IV R.R. 128-129. Vaughn found some blood in the kitchen of the residence, but believed it to be cast-off

blood. IV R.R. 129-130. Vaughn located other knives in the residence, but they had no indication that they were used in the assault. IV R.R. 130. Another folding knife was located in the bedroom. It was closed and did not appear to have fresh blood on it. IV R.R. 130.

On cross-examination, Detective Vaughn testified that he observed Bihl at the hospital and observed the interior of the vehicle and Bihl's clothing at the accident scene. IV R.R. 131. Through photographs admitted by the defense, Vaughn identified a laceration on Bihl's shoulder, a scratch or cut on his neck, and an abrasion on his forehead. IV R.R. 133-134. He also identified small drops of blood on the kitchen floor and on the refrigerator, as well as a smear of blood on the fence. IV R.R. 134, 136.

San Angelo Police Officer Charles Barker, III, testified at trial. IV R.R. 139. Officer Barker affirmed that on the night of May 11, 2013, he was working the swing shift and received a call concerning an unknown problem at an address on Juanita Street. IV R.R. 140. While en route to the Juanita address, Officer Barker came upon a motor vehicle accident on North Jefferson Street. IV R.R. 141. He observed a Cadillac motor vehicle that had run into yard and over a mailbox, flowerbed and bricks. IV R.R. 141. When Officer Barker stopped he observed a man outside the vehicle, later identified as Elias

Bihl, screaming about a gun. IV R.R.141. Barker approached Bihl and noticed blood smeared on Bihl's face, shirt and arms. IV R.R. 142. Barker did not see any obvious injuries. IV R.R. 142. He noticed that Bihl was not making sense, first indicating that nearby people had a gun and then indicating he had the gun in his vehicle or residence. Bihl exhibited signs of being under the influence of a narcotic. IV R.R. 142.

While on the scene Barker saw blood in the front and back of the car. IV R.R. 145. Bihl identified himself to Barker at the scene, and Barker identified Bihl in the courtroom at the trial. IV R.R. 146. Officer Barker detained Bihl at the scene. He was combative with officers, and had to have his feet tied together due to his attempts to move and fight the officers. IV R.R. 147. The vehicle Bihl had been driving was released to Bihl's sister. Officer Barker did not find a gun on Bihl's person or in the vehicle. IV R.R. 148.

On cross-examination, Officer Barker testified that the people Bihl claimed had a gun were the property owners of the location where the accident occurred. He did investigate whether they had weapons. IV R.R. 149. He confirmed that he believed he arrived upon the scene immediately after the accident occurred, that Bihl was outside of the vehicle upon his arrival, and that Bihl never re-entered the vehicle. IV R.R. 150.

San Angelo Police Officer Richard Espinoza testified at the trial. V R.R. 8. Officer Espinoza was working patrol on May 11, 2013, and went to assist fellow officers at the scene of a car accident on Jefferson and North Street in Tom Green County. V R.R. 9-10. Officer Espinoza was able to identify Bihl in the courtroom as being the individual he saw in handcuffs at the scene of the accident. V R.R. 10. At the scene, Bihl was yelling, asking for help and for an ambulance which were already there. He was wearing a wife beater shirt, jeans and one boot. V R.R. 11. Officer Espinoza did not notice any injuries to Bihl that were consistent with the amount of blood on him. V R.R. 12. He rode with Bihl to the hospital, as Bihl was being combative and resistant. V R.R. 12. The officers secured him to the gurney so the medics could treat him. V R.R. 13. Once at the hospital, Bihl continued to be combative including striking, or almost striking, a hospital staff member in the face with his knee. V R.R. 14. Officer Espinoza decided to secure Bihl's legs together and then secure the tie to the gurney. Other officers placed a towel over Bihl's face, leaving his nose uncovered, to prevent him from continuing to spit on staff and officers. V R.R. 15. Based on his past experience with Mr. Bihl, Espinoza was able to identify him. He never noticed any injuries consistent with the amount of blood on Bihl. He had a cut on his arm requiring stitches. V R.R. 16. It took less than five

23

minutes to stitch the cut, and Espinoza considered it to be small. V R.R. 19.

San Angelo Police Officer Richard Cercone, III, testified at the trial. V R.R. 20. On the night at issue, Officer Cercone responded to a call from Officer Dietz at the Juanita address. V R.R. 20-21. Upon arrival Cercone saw Dietz talking with the victim who was lying in a large puddle of his own blood. The victim, later identified as Rivera, had several injuries to his head and arms. V R.R. 22. The injuries visible to Cercone included lacerations on his arms and some head injuries. V R.R. 23. Cercone testified that through his experience and training he had seen similar injuries before, and these particular injuries looked to be caused by a "sharp, cutting object." V R.R. 24. Rivera reported to Cercone that he and his roommate were drinking and doing cocaine, when Bihl became paranoid that somebody was coming after him. V R.R. 25-26. Bihl then grabbed a two-tone colored pistol that he had previously shown to Rivera and pointed at Rivera. V R.R. 26. Bihl then "pistol whipped" Rivera and took him to the bedroom. V R.R. 26. Bihl continued to beat on him in the bathroom until Bihl left the room and Rivera was able to exit the room through the window. V R.R. 27. At some point Rivera was cut, but Rivera did not remember exactly what happened. V R.R. 26. Rivera had described the knife as a black kitchen knife. V R.R. 31.

Medics arrived on the scene quickly, and Cercone travelled with Rivera to the hospital. V R.R. 28. While at the hospital Cercone spoke with Rivera for a period of time discussing the events at the house until Cercone was called away to assist with Mr. Bihl. V R.R. 29. Rivera learned Bihl was in the hospital and became scared. V. R.R. 29. Cercone described Rivera as having two to three gruesome lacerations to the head, one or two stab marks to the arm, a severe finger laceration and a piece of his ear was missing. V. R.R. 30. The ear injury was discovered by medical staff. It appeared that a portion of the upper cartilage had been torn or cut out. V R.R. 30.

The indictment included two enhancement paragraphs referencing prior final felony convictions to which Bihl entered pleas of true during the punishment phase of trial. V R.R. 91-92; C.R. 10-11. Evidence Bihl received both prior felony convictions in accordance with the enhancement paragraphs was admitted into evidence without objection during the punishment phase of trial in the form self-authenticating pen packets. VI R.R. State's Exh. 58, 59, 60; V R.R. 94.

State's Exhibit 58 included documentation in support of Bihl being finally convicted of obstruction or retaliation, a third degree felony, on March 11, 2010. VI R.R. State's Exh. 58. State's Exhibit 58 supported paragraph 2 of the indictment. State's Exhibit 60 consisted of documentation in support of Bihl

25

being finally convicted of possession of marijuana less than 50 lbs. over 5 lbs., a second degree felony, on November 8, 1996. State's Exhibit 60 supported paragraph 3 of the indictment.

State's Exhibit 59 was admitted without objection. Although not included in the indictment, State's Exhibit 59 included documentation in support of Bihl being finally convicted of possession of marijuana, a second degree felony, on January 15, 1999. VI R.R. State's Exh. 59.

Based on a review of all of the evidence in the light most favorable to the verdict and reasonable inferences therefrom, a rational trier of fact could have found all of the essential elements of the aggravated assault with a deadly weapon charge brought against Bihl beyond a reasonable doubt. The evidence was sufficient to support the jury's verdict and Bihl's conviction.

## SUMMARY OF ARGUMENT OF ISSUE NUMBER EIGHT

Defense Counsel did not fail to object to fundamental error.

## ARGUMENT OF ISSUE NUMBER EIGHT

A thorough review of the complete Record reflects there was no fundamental error made or existing in the underlying case. Therefore, there was no failure on the part of trial counsel for Bihl to object to fundamental error.

## SUMMARY OF ARGUMENT OF ISSUE NUMBER NINE

Adverse rulings during the punishment phase on objections or motions did not result in reversible error.

## ARGUMENT OF ISSUE NUMBER NINE

During the punishment phase of trial, in the closing argument of defense counsel, the State made a vague objection to defense counsel's example of a factual scenario that could lead to an obstruction/retaliation charge. V R.R. 116. The trial court sustained the objection. V R.R. 116. Defense counsel thereafter continued his argument to the jury concerning the nature of such charges. V R.R. 116-117. Since counsel was able to continue presenting his desired argument, the trial court's ruling did not have an adverse impact on the defendant.

On March 5, 2014 the State filed State's Motion to Cumulate Sentence. C.R. 19-20. The motion sought for the sentence in the current case, in the event Bihl was found guilty, to be served consecutively to the sentences previously imposed in Cause Numbers C-13-0381-SB and C-13-0382-SB. C.R. 19-20.

During jury deliberations of the guilt/innocence phase, the State sought a ruling on the Motion to Cumulate. V R.R. 122. Counsel for the State and Bihl each made arguments to the trial court, after which the motion was taken under advisement. V R.R. 122-125.

Following the punishment portion, but before Bihl was sentenced by the trial court the State again sought a ruling on the Motion to Cumulate. V R.R. 130. The trial court took judicial notice of its files in Cause Numbers C-13-0381-SB and C-13-0382-SB, each of which were filed in the 340TH Judicial District Court. V R.R. 122. The State provided certified copies of the bail bond and judgment in each case. After hearing argument from the State and defense counsel and taking the motion under advisement, the trial court granted the motion and indicated that the sentence would run consecutively to the sentences in the cases cited in the State's motion. V R.R. 123-125, 130.

Texas Code of Criminal Procedure Article 42.08 provides:

> (a)When the same defendant has been convicted in two or more cases, judgment and sentence shall be pronounced in each case in the same manner as if there had been but one conviction. Except as provided by Sections (b) and (c) of this article, in the discretion of the court, the judgment in the second and subsequent convictions may either be that the sentence imposed or suspended shall begin when the judgment and the sentence imposed or suspended in the preceding conviction has ceased to operate, or that the sentence imposed or suspended shall run concurrently with the other case or cases, and sentence and execution shall be accordingly; provided, however, that the cumulative total of suspended sentences in felony cases shall not exceed 10 years, and the cumulative total of suspended sentences in misdemeanor cases shall not exceed the maximum period of confinement in jail applicable to the misdemeanor offenses, though in no event more than

28

three years, including extensions of periods of community supervision under Section 22, Article 42.12, of this code, if none of the offenses are offenses under Chapter 49, Penal Code, or four years, including extensions, if any of the offenses are offenses under Chapter 49, Penal Code.

(b) If a defendant is sentenced for an offense committed while the defendant was an inmate in the Texas Department of Criminal Justice and serving a sentence for an offense other than a state jail felony and the defendant has not completed the sentence he was serving at the time of the offense, the judge shall order the sentence for the subsequent offense to commence immediately on completion of the sentence for the original offense.

(c) If a defendant has been convicted in two or more cases and the court suspends the imposition of the sentence in one of the cases, the court may not order a sentence of confinement to commence on the completion of a suspended sentence for an offense.

*Texas Code of Criminal Procedure Article 42.08.*

Reviews of a trial court's cumulation of sentences are conducted under an abuse of discretion standard. As set forth in *Nichols v. State*, an abuse of discretion is typically only found should the trial court impose consecutive sentences where concurrent sentences are required by law, should the trial court impose concurrent sentences where consecutive sentences are required by law, or should the trial court not follow statutory sentencing guidelines. *Nichols v. State*, 56 S.W.3d 760, 765 (Tex.App.-Houston [14th Dist.} 2001, pet. ref'd).

Neither subsection (b) or (c) of Article 42.08 preclude the cumulation of

sentences in this matter. Bihl was not sentenced for an offense committed while an inmate in the Texas Department of Criminal Justice, nor was the imposition of sentence suspended in one of his cases.

In addition, the cumulation of Bihl's sentences did not exceed statutory sentencing guidelines. The jury found Bihl guilty of aggravated assault with a deadly weapon, a second degree felony. V R.R. 88; C.R. 49-52, 62. The jury also found the enhancements paragraphs, to which Bihl pled true, to be true. V R.R. 126; C.R. 49-52, 57. Under Texas law, if a person has been convicted of a felony offense other than a state jail felony, and the person has two prior final non-state jail felony convictions, one of which occurred after the other became final, then the current conviction shall be punished by a term of not less than 25 years or more than 99 years or life. Texas Penal Code § 12.42(d). In this case, the sentence of 30 years was within the statutory range based on the jury's findings.

Based on a thorough review of the Record and applicable legal authorities, no reversible error exists based on adverse rulings made during the punishment phase of trial.

## SUMMARY OF ARGUMENT OF ISSUE NUMBER TEN

The jury's assessed punishment falls within the applicable range of punishment and does not constitute reversible error.

## ARGUMENT OF ISSUE NUMBER TEN

Texas Penal Code Section 22.02(a)(2) is the statute applicable to the offense of aggravated assault with a deadly weapon. *Texas Penal Code Section 22.02(a)(2).* Based on the facts and circumstances underlying Bihl's aggravated assault charge, Texas Penal Code Section 22.02(b) results in the application of the punishment range for a second degree felony. *Texas Penal Code Section 22.02.*

Texas Penal Code Section 12.42 is the statute that sets forth the punishment range for habitual felony offenders. *Texas Penal Code Section 12.42.* Section 12.42 (d) provides that "Except as provided by Subsection (c)(2) or (c)(4), if it is shown on the trial of a felony offense other than a state jail felony punishable under Section 12.35 (a) that the defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction the defendant shall be punished by imprisonment in the Texas Department of Criminal Justice for life, or for any term of not more than 99 years or less than 25 years." *Texas Penal Code Section 12.42.*

The indictment includes two enhancement paragraphs. C.R. 12. Paragraph two of the indictment references a third degree felony conviction for obstruction or retaliation Bihl is alleged to have received on March 11, 2010. C.R. 10.

31

Paragraph three of the indictment references a second degree felony conviction for possession of marijuana 5 lbs. > 50 lbs. Bihl is alleged to have received on November 8, 1996. C.R. 11.

Bihl entered pleas of true to both enhancement paragraphs. V R.R. 92. At the conclusion of the presentation of punishment evidence, the jury found Bihl had previously finally been convicted of two felony offenses as charged in paragraph 2 and paragraph 3 of the indictment. V R.R. 126; C.R. 57. The jury assessed Bihl's punishment at thirty (30) years confinement in TDCJ. V R.R. 126; C.R. 57. The trial judge granted the State's Motion to Cumulate Sentence, and sentenced Bihl to thirty (30) years in TDCJ in accordance with the punishment assessed by the jury. V R.R. 130-131; C.R. 49-52. Said punishment was ordered to run consecutively with sentences pronounced in Cause Number C-13-0381-SB and C-13-0382-SB. V R.R. 130; C.R. 49-52.

The thirty (30) year sentence assessed by the jury and ordered by the trial judge falls within the punishment range for a habitual felony offender set forth by the Texas Penal Code. The punishment assessed falls within the applicable statutory punishment range and does not constitute reversible error.

**SUMMARY OF ARGUMENT OF ISSUE NUMBER ELEVEN**

The written Judgment is correct and proper jail credit was given.

## ARGUMENT OF ISSUE NUMBER ELEVEN

The written Judgment appears in the Clerk's Record. C.R. 49-52. The content of the written Judgment accurately reflects the punishment assessed by the jury and the sentence pronounced in open court by the trial judge. C.R. 49-52; V R.R. 130-131. The Reporter's transcript reflects the trial judge awarded Bihl jail credit for the time he had been incarcerated in connection with the underlying case. V R.R. 131. The content of the written Judgment accurately reflects the jail credit awarded to Bihl. C.R. 49-52. There is no indication proper credit was not awarded to Bihl.

## SUMMARY OF ARGUMENT OF ISSUE NUMBER TWELVE

Bihl's trial counsel rendered effective assistance of counsel.

## ARGUMENT OF ISSUE NUMBER TWELVE

This Court evaluates ineffective assistance of counsel claims based on the standard of review established by the United States Supreme Court in *Strickland v. Washington* and adopted by the Texas Court of Criminal Appeals. *Strickland v. Washington*, 466 U.S. 668 (1984); *Hernandez v. State*, 988 S.W. 2d 770 (Tex. Crim. App. 1999).

In *Strickland*, the United States Supreme Court established a two part test applied in reviewing ineffective assistance of counsel claims on appeal. *Strickland v. Washington*, 466 U.S. at 687. The two part test known as the *Strickland Standard* provides as follows: "First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Id*.

This Court applies the *Strickland Standard* as interpreted by the Texas Court of Criminal Appeals. This Court requires a defendant to first show the performance of the defendant's trial counsel was deficient. After successfully illustrating trial counsel's deficient performance, the defendant must show this deficient performance actually prejudiced the defendant. *Thompson v. State*, 9 S.W. 3d 808, 812 (Tex. Crim. App. 1999); *Strickland v. Washington*, 466 U.S. at 694. The defendant is required to prove by a preponderance of the evidence that

34

his trial counsel rendered ineffective assistance. *Bone v. State*, 77 S.W. 3d 828, 833 (Tex. Crim. App. 2002).

The Texas Court of Criminal Appeals has elaborated on how an appellant demonstrates the performance of his trial counsel was deficient and how an appellant demonstrates he was prejudiced by this trial counsel's deficient performance. The Texas Court of Criminal Appeals has held an appellant demonstrates the performance of his trial counsel was deficient by showing the performance of his trial counsel fell below an objective standard of reasonableness. *Thompson v. State*, 9 S.W. 3d at 812. The Texas Court of Criminal Appeals has held an appellant demonstrates he was prejudiced by his trial counsel's deficient performance by showing there is a reasonable probability that, but for trial counsel's unprofessional errors, the result of the proceeding would have been different. *Mitchell v. State*, 68 S.W. 3d 640, 642 (Tex. Crim. App. 2002); *Thompson v. State*, 9 S.W. 3d at 812. The Texas Court of Criminal Appeals has interpreted "a reasonable probability" as a probability sufficient to undermine confidence in the outcome. *Thompson v. State*, 9 S.W. 3d at 812 citing *Hernandez v. State*, 726 S.W. 2d 53, 55 (Tex. Crim. App. 1986).

The reviewing court begins its ineffective assistance of counsel evaluation by presuming trial counsel rendered effective assistance. *Mallet v.*

35

*State*, 65 S.W. 3d 59, 63 (Tex. Crim. App. 2001). To overcome the presumption trial counsel rendered effective assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Mallet v. State*, 65 S.W. 3d at 63 citing *Thompson v. State*, 9 S.W. 3d at 814. The record on appeal is typically undeveloped and fails to illustrate the motive behind trial counsel's actions. *Mallet v. State*, 65 S.W. 3d at 63 citing *Thompson v. State*, 9 S.W. 3d at 813-14.

The trial court appointed Attorney Nathan Butler to represent Bihl on May 13, 2013. C.R. 7. The Clerk's Record reflects Attorney Butler filed a pretrial Motion in Limine on Bihl's behalf. C.R. 21-23. The Reporter's transcript indicates Attorney Butler actively participated in the voir dire process on Bihl's behalf. III R.R. 56-87. The Clerk's Record includes documentation of jury strikes exercised Attorney Butler before a jury was empaneled. C.R. 34-36, 28-30.

The Reporter's transcript reflects Attorney Butler waived opening statement, cross examined the State's witnesses, and made a closing statement on Bihl's behalf during the guilt-innocence phase of trial. IV R.R. 21, 34-37, 44-72, 89-90, 97-104, 131-137, 149-150; V R.R. 17-20, 31-32, 34, 35-38, 57-74. The Reporter's transcript reflects Attorney Butler made an opening statement, presented the testimony of character witnesses, and made a closing statement on

Bihl's behalf during the punishment phase of trial. V R.R. 93-94, 95-100, 101-103, 113-119.

The Record evidence indicates Attorney Nathan Butler effectively represented Bihl throughout the pendency of the case. The Record evidence does not indicate Attorney Butler's performance was deficient in any way. Even if Attorney Butler's performance was somehow deficient, the Record evidence does not indicate Attorney Butler's deficient performance prejudiced Bihl.

## ANDERS BRIEF

The United States Supreme Court does not obligate counsel representing a client on appeal to argue in support of grounds for reversal of the lower court's judgment when after a "conscientious examination" of the case, appellate counsel determines appeal to be "wholly frivolous." *Anders v. State of California,* 386 U.S. 738, 744 (1967). In such situations, the United States Supreme Court has outlined appropriate procedural steps to be taken by appellate counsel: 1) counsel is required to submit a brief examining the record for any point arguably in

support of proper grounds for reversal on appeal; 2) counsel must furnish this brief to an indigent client enabling the client the right to file a pro-se brief based on points of appeal this individual maintains present proper grounds for appeal; and 3) counsel may request the appellate court grant counsel's request to withdraw from the obligation of providing further legal representation to the client on appeal. *Anders v. State of California,* 386 U.S. 738, 744.

Counsel for Elias Shawn Bihl submits the above "Anders Brief" on behalf of Appellant. After a "conscientious examination" of the case, including a diligent review of the Record and applicable authorities, Counsel finds an absence of meritorious grounds for appeal and further submits the basis of any appeal in this case would be frivolous in nature. Therefore Justin S. Mock, Counsel for Appellant, respectfully requests this Court acknowledge and approve her request to withdraw from her court appointed duty of providing further legal representation to Appellant Elias Shawn Bihl on original appeal.

**PRAYER**

Justin S. Mock, Counsel for Appellant Elias Shawn Bihl, prays this Court acknowledge and approve his request to withdraw from his court appointed duty of providing further legal representation to Appellant Elias Shawn Bihl on

original appeal.

Appellant Elias Shawn Bihl prays for additional time to review the Anders Brief submitted on behalf of Appellant and the opportunity to file a pro se Appellant's Brief on Original Appeal on his own behalf.

Respectfully submitted,

Justin S. Mock
Ellis & Mock,PLLC
125 South Irving Street
San Angelo, Texas 76903
Telephone: (325) 486-9800
Facsimile: (325) 482-0565
justin@ellisandmock.com

By: /s/Justin S. Mock
Justin S. Mock
State Bar No.24064155
Attorney for Appellant
Elias Shawn Bihl

## Certificate of Service

I certify a true and correct copy of the above and foregoing Appellant's Original Brief was served in accordance with Rule 9.5 of the Texas Rules of Appellate Procedure on March 10, 2015, on the following parties:

Mr. Jason Ferguson                                      By Personal Delivery
Office of Tom Green County District Attorney
124 West Beauregard Avenue
San Angelo, Texas 76903
Appellee

Mr. Elias Shawn Bihl                                    By Certified Mail,
Inmate Number 01938565                          Return Receipt Requested
TDCJ
McConnell Unit
3001 South Emily
Beeville, Texas 78102
Appellant

/s/ Justin S. Mock

Justin S. Mock, Attorney for Elias
Shawn Bihl

## Certificate of Compliance

I certify the above and foregoing Appellant's Brief contains 8,680 words.

/s/ Justin S. Mock
Justin S. Mock, Attorney for Elias
Shawn Bihl

# ELLIS & MOCK PLLC
## Attorneys and Counselors at Law

125 South Irving Street
San Angelo, Texas 76903
Tel (325) 486-9800
Fax (325) 482-0565

March 10, 2015

Mr. Elias Shawn Bihl
TDCJ No. 01938565
William G. McConnell Unit
Texas Department of Criminal Justice
3001 South Emily Drive
Beeville, Texas 78102

<u>CMRR No. 70113500000332790281</u>

RE:   *Elias Shawn Bihl vs. The State of Texas;*
Cause No. 03-14-00525-CR; Court of Appeals;
Third Judicial District
(Trial Cause No. B-13-0631-SB)

Dear Mr. Bihl:

Enclosed please find a copy of the motion to withdraw as counsel and brief pursuant to *Anders v. California* that I have prepared and filed in your case. After a diligent search of both the clerk's record and reporter's record in your case and a review of the applicable law, it is my opinion that no reversible error occurred at your sentencing.

Whenever appellate counsel files a motion such as this, the law provides the appellant the right to review the record and file a response identifying to the appellate court any grounds he thinks are non-frivolous issues to be raised on his behalf that the appellate court should consider in deciding whether the case presents any meritorious grounds for appeal. Because I have filed this motion and brief, you now have the right to review the record and file a response or brief if you so choose. To assist you in obtaining the record if you wish to review it, I have enclosed a *Motion for Pro Se Access to the Appellate Record* for you to file. In order to obtain the appellate record, you must sign and date the motion and mail it to the Third Court of Appeals within ten days of the date of this letter at the following address:

Jeffrey D. Kyle,
Clerk Third Court of
Appeals Post Office
Box 12547 Austin,
Texas 78711

The Court of Appeals will then direct the clerk of the trial court to provide you with a copy of the appellate record. Your response will be due to be filed in the Third Court of Appeals within 30 days of the date the clerk provides the record to you.

Whether or not you file a response, the law requires the Court of Appeals to review the record to determine if the Court agrees with my assessment that no meritorious grounds for appeal exist, i.e., that no reversible error exists. If the Court does not agree, but instead believes there are non-

42

frivolous issues to be raised on your behalf, the Court must abate the appeal to have another attorney appointed to review the record on your behalf

Should the Court of Appeals ultimately determine that there are no meritorious grounds to be raised and that your appeal is frivolous, the Court will affirm your conviction and sentence. You may then file a pro se petition for discretionary review with the Texas Court of Criminal Appeals. Such petition must be filed within 30 days of the date the Court of Appeals renders its judgment.

Feel free to write me if you have any questions about the procedure utilized in your appeal. I will do my best to answer any questions you may have.

Sincerely,


Justin S. Mock


encl: copy of Brief For Appellant/copy of Motion to Withdraw/Motion for Pro Se Access to Appellate Record

ACCEPTED
03-14-00525-CR
4442271
THIRD COURT OF APPEALS
AUSTIN, TEXAS
3/10/2015 2:51:28 PM
JEFFREY D. KYLE
CLERK

## NO. 03-14-00525-CR

| | | |
|---|---|---|
| **ELIAS SHAWN BIHL** | § | **IN THE COURT OF APPEALS** |
| | § | |
| **VS.** | § | **THIRD JUDICIAL DISTRICT** |
| | § | |
| **STATE OF TEXAS** | § | **SITTING AT AUSTIN, TEXAS** |

## CERTIFICATE OF COUNSEL

In compliance with the requirements of *Anders v. California,* 386 U.S. 378 (1967), I, Justin S. Mock, court-appointed counsel for appellant, ELIAS SHAWN BIHL, in the above-referenced appeal, do hereby verify, in writing, to the Court that I have:

1.   notified appellant that I filed a motion to withdraw as counsel with an accompanying *Anders* brief, and provided a copy of each to appellant;

2.   informed appellant of his right to file a pro se response identifying what he believes to be meritorious grounds to be raised in his appeal, should he so desire;

3.   advised appellant of his right to review the appellate record, should he wish to do so, preparatory to filing that response;

4.   explained the process for obtaining the appellate record, provided a *Motion for Pro Se Access to the Appellate Record* lacking only appellant's signature and the date, and provided the mailing address for this Court; and

5.   informed appellant of his right to seek discretionary review pro se should this Court declare his appeal frivolous.

Respectfully submitted,

Ellis & Mock, PLLC
125 South Irving Street
San Angelo, Texas 76903
Tel: (325) 486-9800
Fax: (325) 482-0565


By: /s/ Justin S. Mock
    Justin S. Mock
    State Bar No. 24064155
    Attorney for ELIAS SHAWN BIHL